[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties in the instant case intermarried on May 17, 1958 at Torrington, Connecticut so that, at the time of the dissolution, this a marriage of some 37 years in duration. The plaintiff has resided in the state of Connecticut for at least 12 months before the filing of the complaint. There are no minor children issue of the marriage though there is one daughter who has attained her majority. The marriage of the parties has broken down irretrievably.
The plaintiff-husband in this matter was employed during most of the marriage by Northeast Utilities or Connecticut Light and Power Company and has recently retired. His retirement is being paid out at the rate of $800 per week. The plaintiff is approximately 59 years of age and the defendant is approximately 56 years of age. The plaintiff seems in relatively good health though the wife has several medical problems, none of which seem to be disabling.
The plaintiff has recently completed a training program as a bus driver and is planning to supplement his income by working part-time starting in the fall as a bus driver for one of the school districts which will give him a part-time position and some additional income, though there was no testimony as to how much this income might amount to.
The defendant-wife did work early on in their marriage. Her employment continued approximately up to the time of the birth of their daughter which was in 1971.
The parties currently own a home in New Hartford, Connecticut, which home was substantially built by the plaintiff-husband during the course of the marriage. Originally they lived in Torrington in a rented unit until they bought the land in New Hartford. They had the foundation poured and the framing to the house done, at which time the plaintiff took over and finished a CT Page 7628 good portion of the house. The rough electrical wiring and the rough plumbing were evidently done by professionals as the husband was not skilled in these areas, though he did work for an electric power company. During the presentation of the plaintiff's case it became apparent that he had a rather selective memory in that he could not recount times while being cross-examined which would have been detrimental to his case. He did remember all those incidents which would have been favorable to his case. Because of his in ability to recall those incidents which would have been unfavorable to his side, the Court is inclined to give less credibility to his testimony than to that of the defendant.
There was one major problem in this marriage and that was the drinking habits of both parties. The plaintiff accused the defendant of being an alcoholic and when she became intoxicated or consumed any liquor she became a nag and made it impossible for him to enjoy any kind of a marital existence. The drinking problems evidently were exacerbated some time after the birth of the child because there doesn't seem to be any recollection on the part of either party to problems prior to the birth of the child.
The wife on the other hand admits to drinking but denied she had a drinking problem and claims that the heavy drinker was the plaintiff-husband, claiming that he would come home and start drinking the minute he got home and became very difficult during the evening as a result of his drinking habits. The marriage seemed to fall apart many years ago and a lot of it was due to the drinking on the part of both parties. It is interesting to note that the drinking of the plaintiff did not seem to be so great as to impair his ability attend to his job and perform satisfactorily in that area.
Probably the most telling testimony was that of the daughter who indicated that both of the parties had a drinking problem but that the father was the party who started drinking first in the evening and the first one to engage in a confrontation between the parties. There was one period of time for about six months in the late 80's when the father stopped drinking and this was a good period in the marriage. The mother at that point in time, although she did not stop drinking entirely, did slow her amount of consumption and it made for a much more pleasant family existence. However, at the end of the six-month period the plaintiff-husband started drinking again and although he started CT Page 7629 with wine there was an indication that he eventually switched to something stronger and his consumption increased substantially, matching what had happened in prior years.
There was also some testimony where it was claimed the plaintiff-husband hit the defendant-wife, in one instance and knocked her to the floor and that she was actually unconscious for a short period of time. There was another incident when the defendant wife was allegedly trying to awaken her husband and that he reached up and hit her. At the time he hit her he was wearing his Elk's Lodge ring and it left a rather large depression on the defendant-wife's forehead.
Both parties were active in their church and at some point, about five or six years ago, the church brought in a female minister. The parsonage was in need of some substantial repairs and the plaintiff-husband being on the board of trustees and being rather handy volunteered to do a lot of the work at the parsonage. He started spending more time there or as much time there as he did at home and the defendant-wife became very jealous of his time spent working for the new minister. Her perception was that there was some type of relationship going on between the plaintiff and the minister, which for lack of a better description could be called a romantic relationship. There was complete denial of such a relationship by both the husband and the minister and it is very probable that the perceptions of the defendant were in error, but she did have this perception and it did lead to complications of the problems then existing between the parties because of their drinking problems.
As stated earlier the defendant-wife had a number of medical problems but none to make her completely unemployable. She would have certain limitations in that her doctor testified she cannot be on her feet more than a couple of hours at a time but he did not indicate that she could not take some kind of a desk job if she could qualify herself for same. She does have some kind of rheumatoid arthritic condition which is controlled by medication and she does have some sciatic nerve and liver problems but nothing that seemed to make her unemployable if she could get the right position with proper training. As indicated earlier, again, the plaintiff-husband has been trained to drive buses and can supplement his retirement income. The defendant-wife's physical problems probably make her uninsurable for health purposes or probably insurable at a higher rate than she normally would have to pay. This creates a problem beyond the three-year COBRA CT Page 7630 provision unless she were to fall within a group plan.
In or about the year 1988 the wife did inherit approximately $65,000 from her mother's estate. The plaintiff-husband is currently living with his mother in her home and he does have at least one brother and possibly another sister, though one sister died in 1993. Whether the plaintiff's mother owns her own home or not the Court was not made aware of. It is not known whether or not the plaintiff would have any money forthcoming from any of his family in the future.
The big problem in this case is the division of the marital estate. The plaintiff-husband does show a one-half equity in the house of $65,000 but that is based upon a $160,000 valuation. The value is probably substantially less, the wife indicating the home to be worth about $140,000 which would leave each with an equity of a little over $50,000. The home is a three-bedroom home and since neither party requires a home that large the Court feels the best division would be accomplished by the sale of the property and the net proceeds being paid out in equal proportions to each party.
There is a 1988 Chrysler sedan and a 1992 truck. The Court would award the Chrysler to the defendant-wife and the Ford truck to the plaintiff-husband. There is also a crystal collection which the husband claims he started but the wife also claims to have an interest in it and the Court would decree that the crystal collection be divided equally between the parties. The wife's inheritance is currently invested in a Bank of Boston CD in the approximate amount of $28,000 and a CD with Phoenix of $10,945. She has another $18,000 in other investments. Since $39,000 was directly from her mother's estate the Court is not inclined to divide the asset with the husband but would award the total left on the inheritance to the wife plus the other of her investments. There is a CLP 401K in the husband's name in the approximate amount of $70,280.14 and an IRA for $11,543.45. There is also three CD's in the wife's name at Dutch Point Credit Union in the approximately amount of $3,587.00. The Court would order that those assets will be retained by the parties, as shown in their respective financial affidavits.
The plaintiff's pension was earned during the course of the marriage and is an asset of the marriage and the Court orders a Qualified Domestic Relations Order be prepared dividing the proceeds of the pension, and it be submitted to the Court for CT Page 7631 approval. The Court will retain jurisdiction over said Order. Each party shall be entitled to receive any beneficiary benefits from the pension from his or her share of the pension if the other dies. This is based upon the pension being evenly split between the parties.
As to the wife being entitled to alimony this was a 37-year marriage and the Court contemplates that the plaintiff-husband is going to seek further income as a bus driver so that the Court will order a payment of $1.00 per year alimony until the wife's attaining age 65, death before age 65, cohabitation with another or remarriage and that the alimony shall be modifiable upon the husband obtaining either part-time or full-time employment. The wife shall further be entitled to continue on her husband's insurance under the terms of COBRA and that the wife will be responsible for paying her own premiums. During that period it is hoped that the wife will secure some kind of employment and will be able to secure some kind of group health insurance at the end of the three-year program.
The household furniture of the parties shall be divided equally between them. Both parties shall be liable for the costs of the maintenance of the home until such time as it is sold and the proceeds are split between them.
ORDERS will issue in accordance with the foregoing Memorandum.
M. MORGAN KLINE State Trial Referee